UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    COMMUNITY MEMORIAL HOSPITAL,      Case No. 12-20666-dob
        Debtor.     Chapter 11 Proceeding
                Hon. Daniel S. Opperman
_____/

CMH LIQUIDATING TRUST,
       Plaintiff,

v.     Adversary Proceeding
    Case No. 14-2082-dob

NATIONAL UNION FIRE INSURANCE
CO. OF PITTSBURGH, PA,
       Defendant.
_____/

REPORT AND RECOMMENDATION

Introduction

The United States District Court for the Eastern District of Michigan directed this Court in its June 6, 2017 Opinion and Order to report on whether the Directors and Officers Liability Insurance Policy ("D&O Policy") constitutes an executory contract or an unexpired lease under 11 U.S.C. § 365(e)(1) and whether the ipso facto provision of Section 365 applies. The parties[1] agree this issue may be dispositive, but also argue that 11 U.S.C. § 541 may be applicable. After review of the pleadings filed in this case and hearing oral argument, this Court concludes that it should issue a Report and Recommendation ("R&R") that the D&O Policy is an executory contract, but not an unexpired lease.[2]

---

[1] To be consistent, this Court adopts the references made by the District Court. The Plaintiff will be referred to as the Trust, the Defendant as National Union, and the Debtor as CMH.

[2] Counsel for the Trust conceded that the D&O Policy is not an unexpired lease at the August 24, 2017 hearing, so the Court need not address this issue.

Proposed Findings of Fact

For the sake of brevity, this Court incorporates the previous detailed factual background as reported in *In re Cmty. Mem'l Hosp. (Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CMH Liquidating Trust)*, 532 B.R. 898 (Bankr. E.D. Mich. 2015) and the June 6, 2017 Opinion and Order of the District Court.

While the Court and the parties thought that all issues were previously thoroughly briefed and argued, National Union requested the right to file a supplemental brief to address issues raised by the Trust at oral argument. The Court granted this request and supplemental briefs were filed by the end of October 2017.

Additional findings of fact must be made. These facts include:

The D&O Policy for the 2011-2012 time period, which is the policy that was in effect when CMH filed its bankruptcy petition, contained the following language:

> Except as indicated below, if the **Named Organization** shall cancel or the **Named Organization** or the **Insurer** shall <u>refuse to renew</u> this **Coverage Section**, then solely with respect to this **Coverage Section**, the **Named Organization** shall have the right to a period of one, two, three, four, five or six years or of unlimited duration following the effective date of such cancellation or nonrenewal upon payment of the respective "**Additional Premium Amount**" described below (herein referred to as the "**Discovery Period**") in which to give to the **Insurer** written notice of **Claims** first made against the **Insureds** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The provisions cited in previous Opinions, as incorporated in this R&R, are substantively similar for both the pre-petition and post-petition D&O Policy. Subsequently, about one month after the post-petition D&O Policy was issued, CMH bought the additional coverage described above. CMH did so because it ceased operations after the sale of its operating assets.

Proposed Conclusions of Law

The parties agree that this Court's analysis should be limited to the issues raised by the District Court in its June 6, 2017 Opinion and Order. The Trust argues that while both Section 365 and Section 541 support its position, a more concise analysis should be limited to Section 365. National Union denies that any coverage exists under any analysis. Since this Court has previously issued a R&R regarding the D&O Policy under Section 541, the Court will reproduce that portion of its previous R&R as follows:

The D&O Policy Is Property Of The Estate

The Trust argues strenuously that the D&O Policy is an asset of the estate pursuant to 11 U.S.C. § 541 and that it has the right to enforce the D&O Policy as to National Union. In response, National Union points out that the D&O Policy before the Court was issued after Community Memorial filed its Chapter 11 petition and therefore could not possibly be property of the estate. National Union's argument ignores, however, 11 U.S.C. § 541(a)(7), which states:

> The commencement of a case under Section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:
>
> . . .
>
> (7)   any interest in property of the estate acquired after the commencement of the case.

To shore up its argument, National Union points the Court to a decision of the United States District for the Eastern District of Michigan of *Sweet v. Liberty Mut. Group, Inc.*, 2015 WL 3440859, at *2 (E.D. Mich. May 28, 2015). In *Sweet*, the Chapter 7 estate included a home protected by a homeowners insurance policy. After the debtors filed their Chapter 7 petition, the home suffered a water loss covered by the insurance policy. As the District Court determined,

however, the loss occurred after the petition was filed and was therefore not part of the bankruptcy estate.

Here, a reading of the complaint in the *Anderson* Adversary Proceeding[3] reveals that the vast majority of the allegations made by the Trust involve facts and events that occurred prior to the Chapter 11 petition. *Sweet* therefore is distinguishable on a temporal basis. Accordingly, finding that the general rule is that insurance policies are property of the estate, the Court, for purposes of this R&R, concludes that the D&O Policy in this case is property of the estate. *In re Dow Corning Corp.*, 198 B.R. 214, 244 (Bankr. E.D. Mich. 1996).

The D&O Policy is an Executory Contract

Both the Trust and National Union devote considerable time and effort to the issue of whether the 2011-2012 D&O Policy was renewed by National Union. The Trust relies heavily on three cases: *In re B. Siegel Co.*, 51 B.R. 159, 161 (Bankr. E.D. Mich. 1985); *Garnas v. Am. Family Mut. Ins. Co. (In re Garnas)*, 38 B.R. 221, 223 (Bankr. D.N.D. 1984); and *McCoy v. McCoy (In re McCoy)*, 2016 WL 4268702, at *17-21 (Bankr. E.D. Va. Aug. 11, 2016) and argues that since National Union attempts to modify the existing contractual rights of a debtor, the ipso facto provisions of the Bankruptcy Code, especially Section 365, prohibit National Union from doing so. National Union argues that the 2011-2012 D&O Policy is separate and distinct from the 2012-2013 D&O Policy and that the ipso facto provisions of the Bankruptcy Code are therefore not triggered.

11 U.S.C. § 365(e)(1) states:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor my not be terminated or modified, and any right or obligation under such contract or lease may

---

[3] The details of this action are detailed in the facts stated in the previous R&R and Opinions. This is the action that prompted this Adversary Proceeding regarding insurance coverage issues.

4

not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on–

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

This Court finds the rationale in *B. Siegel*, *Garnas*, and *McCoy* to be persuasive. While National Union is correct in that the 2011-2012 D&O Policy is different from the 2012-2013 D&O Policy in regard to time frames, the rights of CMH continued under both policies. In this case, National Union was not a newcomer to CMH. It had previously acted as the insurer for CMH under the D&O Policy and agreed to accept duties of an insurer under the 2012-2013 D&O Policy, just as the insurers in *B. Siegel* and *Garnas*.

The Trust's arguments are more persuasive once the impact of the commonly referred to "tail coverage" provisions reproduced above are considered. As argued by the Trust's counsel, at the end of the term of the 2011-2012 D&O Policy, CMH had three choices: (1) It could agree to renew or continue that policy in the form of the 2012-2013 D&O Policy; (2) Cancel the D&O Policy; or (3) Cancel the D&O Policy, but purchase tail coverage as allowed by the 2011-2012 D&O Policy. National Union could have refused to renew the 2011-2012 D&O Policy, but was contractually bound to provide tail coverage if requested by CMH. Using the language of the 2011-2012 D&O Policy, since coverage continued, the parties must have agreed and understood that the D&O Policy was renewed. CMH did not cancel the D&O Policy and neither CMH or National Union refused to renew the D&O Policy.

Even if that is not true, coverage under a D&O Policy would have existed. As argued by the Trust's counsel, if either CMH or National Union elected to not continue the 2011-2012 D&O

5

Policy, CMH had to have insurance because it was a debtor-in-possession under Chapter 11. As shown by subsequent facts, CMH did indeed elect to acquire tail coverage shortly after its operating assets were sold. There can be no mistake that CMH intended to have D&O Policy coverage and had the ability to either purchase the D&O Policy coverage as a renewal of the previous D&O Policy or tail coverage per the previous D&O Policy.

Accordingly, National Union was required to provide coverage as defined in the D&O Policy either as a renewal of the 2011-2012 D&O Policy as evidenced by the 2012-2013 D&O Policy or by tail coverage that would have existed under the 2011-2012 D&O Policy. Similar to *B. Siegel*, the policy in place was renewed and therefore is an executory contract. Since *B. Siegel* is a case from this District and remains unchallenged for over thirty years, this Court is compelled to rely on it. Therefore, the interpretation of the D&O Policy that would restrict and limit CMH's rights cannot be enforced as violative of the ipso facto provisions of the Bankruptcy Code, Section 365(e)(1). Although not necessary to this Court's holding, the same result occurs under Section 541(c)(1).

National Union argued at the hearing that the D&O Policy itself never covered the type of losses claimed by the Trust. But, that is not the issue before this Court, so this Court expresses no opinion as to that issue.

## Conclusion

For the reasons stated in the previous R&R and this R&R, the Court concludes that the D&O Policy in question is property of the estate, that the application of the ipso facto provisions of the Bankruptcy Code apply and that D&O Policy coverage by National Union should be required in this case.

**Signed on February 02, 2018**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**

7