UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE COMMUNITY MEMORIAL
HOSPITAL,

      Debtor,

CMH LIQUIDATING TRUST,

      Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURG, PA,

      Defendant.
_____/

Bankruptcy Case No. 12-20666
Adv. Proc. No. 14-2082

HON. DANIEL S. OPPERMAN

Case No. 16-cv-14434

HON. MARK A. GOLDSMITH

## OPINION & ORDER
### (1) OVERRULING DEFENDANT NATIONAL UNION'S OBJECTIONS TO THE BANKRUPTCY COURT'S SECOND REPORT & RECOMMENDATION (Dkt. 11); (2) ADOPTING THE BANKRUPTCY COURT'S SECOND REPORT & RECOMMENDATION (Dkt. 18); AND (3) REMANDING THE CASE TO THE BANKRUPTCY COURT FOR FURTHER PROCEEDINGS

This matter is before the Court on the second Report & Recommendation ("R&R") of the Bankruptcy Court (Dkt. 18), which recommends finding that the insurance policy at issue is an executory contract as to which the Bankruptcy Code's prohibition against ipso facto provisions applies. Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") filed objections to the R&R (Dkt. 11), to which Plaintiff CMH Liquidating Trust (the "Trust") filed a response (Dkt. 12).[1] Because oral argument will not aid the decisional process, the

---

[1] This response offered an argument that the Bankruptcy Court's opinion should be upheld on grounds not urged to that court, i.e. certain public policy arguments. Because the Court is adopting

1

objections to the R&R will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons set forth below, the objections are overruled, and the R&R is adopted.

## I. BACKGROUND

Community Memorial Hospital ("CMH") filed for bankruptcy on March 1, 2012. At the time, it had a directors and officers liability insurance policy ("D&O Policy") from National Union, which ran from March 11, 2011 to March 11, 2012. See 2011-2012 Policy, Ex. A to Def. Obj. (Dkt. 11-2). After filing its petition, CMH renewed its D&O Policy, which ran from March 11, 2012 to March 11, 2013. See 2012-2013 Policy, Ex. I to Def. Obj. (Dkt. 11-10). The renewed policy was identical to the one that ran for the prior twelve-month period. CMH began to wind down operations on April 4, 2012. Following the wind-down decision, CMH requested that National Union add an endorsement to the renewed policy – known as tail or run-off coverage – to provide coverage for any claims made during the three-year period following April 4, 2012. See Run Off Policy Endorsement, Ex. N to Def. Obj. (Dkt. 11-15). National Union complied with that request and issued the tail coverage endorsement effective April 4, 2012. Id. The Trust, to which CMH's rights had been assigned, subsequently filed suit against former directors and officers of CMH in February 2014, asserting claims for breach of fiduciary duty and negligence. See Underlying Compl., Ex. O to Def. Obj. (Dkt. 11-16).

The D&O Policy provided three types of coverage: (i) Type A coverage indemnified directors and officers for liability, provided they were not indemnified by CMH; (ii) Type B coverage indemnified CMH to the extent that it was duty-bound to reimburse or indemnify the

---

the Bankruptcy Court's recommendation based on the arguments raised before that court, the alternate public policy grounds will not be considered.

directors and officers; and (iii) Type C coverage protected CMH in the event that it was sued directly for the wrongful acts of its directors and officers. Id.

The D&O Policy included an endorsement – Endorsement 10 – stating that coverage was subject to a bankruptcy/insolvency/creditors exclusion:

> [National Union] shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:
>
> (1)　alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:
>
> (i)　any Wrongful Act which is alleged to have led to or caused, directly or indirectly, wholly or in part, the bankruptcy or insolvency of the Organization, or to the Organization filing a petition, or a petition being filed against the Organization, pursuant to the federal Bankruptcy Code or any similar state law, or the Organization assigning its assets for the benefits of its creditors; or
>
> (ii)　the Organization having sustained a financial loss due, directly or indirectly, wholly or in part, to a Wrongful Act of the Insured(s), but only if such Claim is made after the Organization has been determined to be insolvent, or has filed a petition for bankruptcy, or a petition has been filed against it, or the Organization has assigned its assets for the benefit of its creditors; or
>
> (2)　brought by or on the behalf of any creditor or debt-holder of the Organization, or arising out of any liability (whether alleged or actual) to pay or collect accounts, including but not limited to Claims alleging misrepresentation in connection with the extension of credit or purchase of a debt instrument, or Claims alleging any deterioration in the value of the debt as a result of (wholly or in part) the bankruptcy or insolvency of the Organization.

See id. at 70. The same endorsement was found in the 2012-2013 policy for which tail coverage was purchased.

It was this endorsement that National Union cited in denying any coverage obligation for the underlying action against directors and officers, arguing that at least some of the claims were based on the contention that the directors and officers committed wrongful acts that led CMH to

3

file bankruptcy. In turn, the Trust filed this adversary proceeding, seeking a determination that the endorsement was not enforceable on the grounds that it was an ipso facto clause – i.e. a provision in an executory contract that provides for termination or modification based on the filing of a bankruptcy petition or the financial condition of the debtor. Such clauses are prohibited under the Bankruptcy Code. See 11 U.S.C. § 365(e)(1).[2]

In its first R&R (Dkt. 1), the Bankruptcy Court found, among other things, that Endorsement 10 was not a prohibited ipso facto clause, because the endorsement did not purport to make the entire policy ineffective as a result of the bankruptcy filing. On appeal, this Court agreed with CMH's objection, and held that the ipso facto prohibition may be triggered even if the challenged prohibition invalidates only part of a contract, and not the entire contract. See 6/6/2017 Op. & Order (Dkt. 9). This Court did not rule on whether Endorsement 10 constituted an unenforceable ipso facto provision, because there were other issues that would still need to be decided by the Bankruptcy Court to reach that issue, including whether the insurance policy was an "executory contract," as the prohibition on ipso facto clauses only applies to such contracts. This Court remanded this matter to the Bankruptcy Court for further consideration of all the parties' arguments.

---

[2] "Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract that is conditioned on—

    (A) the insolvency or financial condition of the debtor at any time before the closing of the case;

    (B) the commencement of a case under this title; or

    (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement."

On remand, the Bankruptcy Court determined, among other things, that the D&O Policy is an executory contract to which protection against ipso facto provisions applies. National Union filed objections to this finding.

## II. STANDARD OF REVIEW

In a non-core proceeding, such as the instant matter, a district court reviews de novo those portions of the bankruptcy court's proposed findings of fact or conclusions of law to which a party has timely and specifically objected. 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d); see also Waldman v. Stone, 698 F.3d 910, 922 (6th Cir. 2012) (explaining that for non-core proceedings, the bankruptcy court submits proposed findings of fact and conclusions of law, which the district court reviews de novo under Federal Rule of Bankruptcy Procedure 9033(d) upon the timely filing of specific objections). A district court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d).

## III. ANALYSIS

The parties and the Bankruptcy Court framed the issue as whether the insurance policy at issue should be deemed an "executory contract" – a term the Bankruptcy Act does not define, but which courts have. See, e.g., Matter of B. Siegel Co., 51 B.R. 159, 161 (Bankr. E.D. Mich. 1985) (citing Executory Contracts in Bankruptcy, Part 1, 57 Minn. L. Rev. 439, 460 (1973)) (defining an executory contract as a contract "under which the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other").

The dispute here, however, is not so much whether obligations remain unperformed. The central dispute is whether the term "executory contract" should be applied to the particular

endorsement under which coverage is sought – without regard to the entirety of the contractual relationship, both pre-petition and post-petition, which could bear on whether a contracting party is seeking to terminate or modify a right that has pre-petition roots. Because the Court adopts the more fulsome approach, it concludes that Endorsement 10 is a prohibited ipso facto clause that National Union attempted to enforce to limit an executory contract.

National Union's premise is that the tail coverage is a distinct policy, and as such did not exist pre-petition. In its view, only obligations grounded in pre-petition contracts are subject to the ipso facto prohibition; because the tail coverage did not exist pre-petition, it could not possibly constitute an executory contract against which ipso facto provisions are unenforceable. See Def. Obj. at 11-12.[3] The Trust argues that the proper focus is not when the tail coverage came into existence, but whether the contractual relationship was continuous and essentially unchanged from the pre-petition period through the post-petition period, such that the same contractual relationship and the same contract can and should be deemed to have been extant pre-petition. See Pl. Resp. at 12 (Dkt. 12) ("[T]he Policy should be treated as continuous over the pre-petition and post-petition periods for purposes of determining whether National Union can enforce the contractual exclusion of coverage upon CMH filing for bankruptcy.")

The Bankruptcy Court agreed with the Trust's argument that "since National Union attempts to modify the existing contractual rights of a debtor, the ipso facto provisions of the Bankruptcy Code, especially Section 365, prohibit National Union from doing so." 2d R&R at 4 (Dkt 18). The Bankruptcy Court concluded that, although "the 2011-2012 D&O Policy is different

---

[3] National Union cites cases holding that an executory contract must be pre-petition, but those cases involve the issue of a trustee's rejection or assumption of a contract – not enforcement of an ipso facto prohibition. See, e.g., In re General Homes Corp., 199 B.R. 148, 149 (S.D. Tex. 1996). For purposes of this opinion, National Union's premise in this regard may be assumed to be correct.

from the 2012-2013 D&O Policy in regard to time frames, the rights of CMH continued under both policies." Id. at 5. The court further concluded that "[u]sing the language of the 2011-2012 D&O Policy, since coverage continued, the parties must have agreed and understood that the D&O Policy was renewed." Id.

The Bankruptcy Court rightly focused on whether the policies in effect pre- and post-petition were essentially the same – a perspective adopted in In re Garnas, 38 B.R. 221 (Bankr. D.N.D. 1984). The issue there was whether an insurer could fail to renew a one-year policy post-petition when the policy had been issued pre-petition. Observing that the policies of this type would "automatically renew upon expiration of the term," id. at 222, the court concluded that "[a]lthough a policy may state a termination date, that date in most circumstances is simply ignored and the policy continues on and on with the relationship between the insurance company and the policyholder continuing over the term without any interaction between the two except for payment of premium." Id. at 223. Under these circumstances, the court concluded that the policies were executory contracts that would have been automatically renewed were it not for the filing of a bankruptcy petition, thereby justifying an injunction to prevent nonrenewal of the policies. Id. at 224.

Here, there is no dispute that the two relevant policies are functionally the same. The language of the 2011 and 2012 policies are identical, except for the timeframes and the premium amounts. Notably, each contained Endorsement 10. Thus, the relationship between insured and insurer remained continuous and essentially unchanged.

While National Union tries to characterize the tail coverage as a separate policy, it was nothing more than an endorsement to the 2012 policy. As an appendage to the 2012 policy, it had pre-petition roots that make it part of an executory contract. In fact, its roots are deep because the

2011 contract and the 2012 contract gave the insured the right to purchase tail coverage. See 2d R&R at 2. Thus, as the Bankruptcy Court observed, the insurance contract extant post-petition can be viewed either as the renewal of the pre-petition 2011 contract or as tail coverage purchased under rights guaranteed by the pre-petition 2011 contract. Either way, National Union's premise that the contract did not exist as of the bankruptcy filing is without merit.

The cases cited by National Union that purportedly support its position are not persuasive. In In re New England Marine Services, Inc., 174 B.R. 391 (Bankr. E.D.N.Y. 1994), the debtors filed for bankruptcy in November 1992, but continued purchasing pollution liability insurance on an annual basis through the December 1993 - December 1994 policy period. Holding the ipso facto prohibition inapplicable, the court allowed cancellation of the 1994 post-petition policy, finding that it was "distinctively different" from the 1990 pre-petition policy. Id. at 397. The differences included coverage for different vessels, thereby making the 1994 post-petition a new policy. Id. There are no such "distinctively different" provisions in our case.

Also distinguishable is In re Bolin Oil Co., 51 B.R. 936 (Bankr. N.D. Ohio 1985), in which the debtor entered into a new policy with a new insurer after the filing of a bankruptcy petition; clearly there was no continuation of a contractual relationship when the identity of the insurer changed. Similarly, in In re Bogey's Barn, Ltd., 47 B.R. 555 (Bankr. S.D. Fla. 1985), there was no pre-bankruptcy relationship between the parties. Finally, In re Baird, 567 F.3d 1207 (10th Cir. 2009), does not help National Union, as that case involved a medical malpractice insurance policy whose coverage period had expired two years before the filing of bankruptcy; the question in that case – whether the trustee could assume the contract – had nothing to do with the issue in our case:

8

whether multiple policy documents evidence a unitary contractual relationship for purposes of interpreting the ipso facto prohibition of § 365(e).[4]

As the Bankruptcy Court found, the contractual relationship between insurer and insured here was continuous and substantially unchanged as between the pre-petition period and the post-petition period. Given that business reality, National Union's declination of coverage impeded an executory contract, in violation of the Bankruptcy Code's prohibition on enforcement of ipso facto provisions. Accordingly, National Union's objections are overruled.[5]

### IV. CONCLUSION

For these reasons, National Union's objections (Dkt. 11) are overruled, and the Court adopts the Bankruptcy Court's second R&R (Dkt. 18). Because the second R&R does not contain a specific recommendation on the pending cross-motions for summary judgment, the case is remanded to the Bankruptcy Court for further proceedings.

Dated: July 23, 2019                   s/Mark A. Goldsmith
   Detroit, Michigan               MARK A. GOLDSMITH
                                          United States District Judge

---

[4] National Union also cites to authority holding, under state law, that renewal policies are considered distinct policies. See, e.g., Farmers Ins. Exch. v. Allstate Ins. Co., 143 F. Supp. 213, 215 (E.D. Mich. 1956) (determining, outside of the bankruptcy context, that there was no meeting of the minds to renew a policy and thus no contract). Such authorities have limited usefulness in deciding, in the bankruptcy context, whether the ipso facto rule should be applied to a contractual relationship that is continuous and unchanging through the pre-petition and post-petition period.

[5] National Union also objects to the Bankruptcy Court's conclusion that the bankruptcy exclusion was a prohibited ipso facto clause within the meaning of § 541(c)(1) of the Bankruptcy Code. That section only applies if the policy in question becomes property of the estate. The Bankruptcy Court did not fully address this argument, see 2d R&R at 6, because it was not necessary to address it if the exclusion is already prohibited under § 365. This Court will take the same approach.

National Union also raises several objections to what it claims are "misstatements that warrant correction." Def. Objs. at 23. These misstatements include non-material statements of fact and law contained in the Bankruptcy Court's R&R. None of the supposed misstatements affects the outcome of the case, and thus need not be addressed.